```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: _____ 6/9/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                                 :

ALEXANDER MOSKOVITS,          :
                                   :

                  Plaintiff,    :

            - against -       :

                                   :

CALVIN GRIGSBY, BANK OF AMERICA  :
N.A., RAIMUNDO COLOMBO, and JORGE  :
SIEGA,                           :
                                   :

               Defendants.  :
                                   :
---------------------------------------------------------X

19-CV-3991 (VSB)

**OPINION & ORDER**

Appearances:

Michael Peter Kushner
Kushner Law Group LLC
Brooklyn, New York
*Counsel for Plaintiff*

Calvin Grigsby
Grigsby & Associates
Danville, California
*Pro Se Defendant*

Beth L. Kaufman
Schoeman Updike & Kaufman & Berger LLP
New York, New York
*Counsel for Defendant Bank of America N.A.*

    <u>VERNON S. BRODERICK</u>, United States District Judge:

    Plaintiff Alexander Moskovits brings this action against Defendants Calvin Grigsby,

Bank of America, N.A. ("BoA" or "Bank of America"), Raimundo Colombo, and Jorge Siega,

asserting claims of unjust enrichment, and breach of contract.  Before me is Plaintiff's motion to

remand this matter to state court, where it was originally filed.  Because it is within my

discretion to remand a case to state court where, as here, the court loses the bases for its

jurisdiction under 28 U.S.C. § 1441(d), and because I find that Defendant Siega was not

fraudulently joined to the case, negating subject matter jurisdiction under 28 U.S.C. 1332(a),

Plaintiff's motion to remand to state court is GRANTED.

## I.    <u>Procedural History</u>

Plaintiff commenced this action by filing a pro se summons and complaint in New York

State Supreme Court, New York County, on December 26, 2018 ("State Court Action").

(Compl.)[1]  The State Court Action was filed against Defendants Grigsby; BoA; Raimundo

Colombo ("Colombo"), Governor of the State of Santa Catarina, Brazil, in his individual

capacity; and Jorge Siega ("Siega").  The State Court Action was also filed against the Federal

Republic of Brazil; The State of Santa Catarina, Brazil; the State of Maranhao, Brazil; and the

State of Mato Grosso, Brazil.  On the same day, Plaintiff filed a pro se summons and complaint

in this Court against the same Defendants (the "Prior SDNY Action"), *Moskovits v. Grigsby et

al.*, 18-cv-12281 (CM) (Dec. 26, 2018).  The Prior SDNY Action was assigned to Chief Judge

Colleen McMahon, who denied Plaintiff's *in forma pauperis* application, and dismissed the case

without prejudice when Plaintiff failed to pay the filing fee.  (18-cv-12281; Docs. 7, 8.)  On May

6, 2019, the State Court Action was removed to the Southern District of New York by Defendant

Federal Republic of Brazil under 28 U.S.C. § 1441(d).  (Doc. 1.)

On May 7, 2019, Plaintiff filed a notice of voluntary dismissal dismissing the removing

party Federal Republic of Brazil; the State of Santa Catarina, Brazil; the State of Maranhao,

---

[1] "Compl." or "Complaint" refers to Plaintiff's December 26, 2018, Summons and Complaint filed in New York
State Supreme Court.  (Doc. 1-1.)

Brazil; and the State of Mato Grosso, Brazil.  (Docs. 8, 9.)  The parties remaining in the action

are Plaintiff Moskovits, a resident of Brazil; and Defendants Grigsby, a citizen of California;

Bank of America, a citizen of North Carolina; Siega, a citizen of Brazil; and Colombo, a citizen

of Brazil.

On May 14, 2019, Plaintiff filed a motion to remand the action to state court, which was

marked by the Clerk's office as a deficient docket entry.  (Doc. 12.)  Defendant Grigsby filed his

opposition on June 5, 2019, (Doc. 18), BoA filed its opposition on June 17, 2019, (Doc. 20), and

Moskovits filed his reply on July 19, 2019, (Doc. 30).  Plaintiff re-filed the motion in the proper

format on July 25, 2019, (Doc. 32).  The previously filed opposition and reply papers are

considered herein in response to the corrected motion to remand.

## II.   Background[2]

On February 18, 2011, Defendant Grigsby contacted Plaintiff Moskovits to discuss

potential business opportunities relating to oil in Brazil.  (Compl. ¶¶ 18–20.)  Moskovits

provided Grigsby with a loan structure which would allow Grigsby and BoA to secure credit for

sub-sovereign state transactions guaranteed by the Brazilian Government, and provided Grigsby

with potential clients for such transactions.  (Compl. ¶¶ 21–29.)  For Moskovits's work, Grigsby

promised compensation, valued at 35% of 1% of the transaction value for a transaction value

over $500 million, or 35% of 2% for a transaction value under $500 million.  (Compl. ¶¶ 33, 53–

54.)  The parties frequently corresponded about the potential transactions by email.  Between

August 1 and 3, 2011, Grigsby traveled to Brazil to meet with the potential borrowers.  (Compl.

¶ 44.)  Moskovits arranged for meetings with public officials and representatives of the public

[2] The facts in Section II are recited for background only, and are not intended to and should not be viewed as findings of fact.

utility companies.  (Compl. ¶¶ 39–44.)  These meetings were attended by, among others, Grigsby, Moskovits, and Siega.  (Compl. ¶¶ 45–46.)

In the weeks following Grigsby's visit, Moskovits continued to work on the deal, including offering to deliver the Memorandum of Understanding from Grigsby to CELESC, the state-owned electric utility in Santa Catarina.  (Compl. ¶ 55.)  However, Grigsby became confrontational in his responses, and evaded signing any compensation agreement with Moskovits.  (Compl. ¶¶ 59–62, 64–65, 67, 71–72.)  Grigsby also warned Moskovits against contacting CELESC, and cut off Moskovits's @grigsbyinc email address.  (Compl. ¶¶ 59.) Moskovits attempted to discuss the potential CELESC deal, valued at $400 million, with Siega, who denied any knowledge of the deal, despite his presence at the meetings and his presence on many of the emails between Grigsby and Moskovits discussing the deal.  (Compl. ¶ 57.) Moskovits alleges that he was purposefully cut out of the deal.

Bank of America and the State of Santa Catarina signed a $726 million credit agreement on December 27, 2012, allegedly using Moskovits's finance structure.  (Compl. ¶ 73.) Moskovits further alleges that three deals totaling $1.9 billion were consummated by Grigsby and BoA, using his financial structure.  (Compl. ¶¶ 92–93.)  To date, Moskovits has not received any compensation in relation to these deals.

III.   **Discussion**

A.    *Jurisdiction*

This case was properly removed from state court to the Southern District of New York pursuant to 28 U.S.C. § 1441(d), which provides that "[a]ny civil action brought in State court against a foreign state . . . may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C.

4

§ 1441(d).  "Under the Foreign Sovereign Immunities Act of 1976 . . . the district courts of the United States are vested with subject matter jurisdiction in any civil action against a foreign state or its instrumentality."  *Proyecfun de Venez., S.A. v. Banco Industrial de Venez., S.A.*, 760 F.2d 390, 392–93 (2d Cir. 1985); 28 U.S.C. § 1330.  Here, the State Court Action included allegations against foreign states, and those foreign states removed the action to the proper district court embracing New York County.

However, the day after the case was removed to federal court Plaintiff voluntarily dismissed the foreign states, the parties whose presence in the case created jurisdiction and the grounds for removal.  Accordingly, the original grounds for removal, and the grounds by which this court gained subject matter jurisdiction, no longer exist.  Although the Second Circuit has yet to directly consider this issue, other Circuits have held that where "a purported foreign sovereign defendant who has filed for removal under [section 1441(d)] is dismissed from the case before the federal court has had an opportunity otherwise to exert authority over the case, the district court retains no pendent party jurisdiction over the remaining domestic defendants," and, assuming no other basis for subject matter jurisdiction exists, "the case must be remanded to state court."  *Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1284–85 (4th Cir. 1994); *see also In re Surinam Airways Holding Co.*, 974 F.2d 1255, 1260 (11th Cir. 1992) ("[I]f the district court loses the bases for its jurisdiction under § 1441(d), then it will have discretion whether to remand the remaining claims to state court."); *but see In Re Asbestos Prods. Liab. Litig.*, 536 Fed. App'x 183, 190 n.15 (3d Cir. 2013) (unreported) (distinguishing its case from *Shlumberger* and finding that where the foreign state remained in the action for several years after removal, and the district court had the opportunity to extend authority over the case, the District Court is not "deprive[d] . . . of subject matter jurisdiction, as long as jurisdiction existed

5

at the time the action was removed from state court").  The Supreme Court has similarly held

that when the grounds for jurisdiction in federal court no longer exist, the district court has

discretion to remand the case to state court.  *Cf. St. Paul Mercury Indem. Co. v. Red. Cab Co.*,

303 U.S. 283, 295 (1938) (finding that, in the case of a separable controversy "if, after removal,

the plaintiff discontinues or dismisses as to the defendant who removed . . . the case must be

remanded").

   Following this precedent, I find that it is within my discretion to remand the case to state

court, and I choose to do so for the following reasons.  First, it is Plaintiff's clear preference to

litigate this case in state court.  Although not dispositive "deference is normally accorded to

Plaintiff's original choice of forum."  *Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp

1276, 1278 (S.D.N.Y. 1992) (citing *First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 79

(2d Cir. 1989)).  Plaintiff first filed this case in state court, and asserts in his affidavit that he

prefers state court because of the lower filing costs,[3] the cost effective methods of service in state

court, and the expense of translation requirements in federal court.  (Pl. Aff. 3.)[4]  Plaintiff further

demonstrated his preference for state court by immediately dismissing the foreign states, the

removing parties, after the case was removed.  Accordingly, because the foreign states creating

jurisdiction under § 1441(d) have been dismissed, and because Plaintiff shows a clear preference

for state court, Plaintiff's claims are remanded to state court.

   Second, under 28 U.S.C. § 1447(c) "[i]f at any time before final judgment it appears that

the district court lacks subject matter jurisdiction, the case shall be remanded."  In an effort to

stave off remand, Defendants argue that I should keep the action because there is subject matter

---

[3] As noted above, Plaintiff's request for IFP status was denied and he subsequently failed to pay the filing fees in the Prior SDNY Action.

[4] "Pl. Aff." refers to Plaintiff's Affidavit in support of his motion to remand.  (Doc. 33)

jurisdiction under diversity of citizenship.  However, Defendants' analysis is flawed under the circumstances presented here.  Although Federal courts have original jurisdiction over state law claims pursuant to 28 U.S.C. § 1332(a) where a dispute is between citizens of different states and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332(a), "[courts] do not have diversity jurisdiction over cases between aliens." *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC,* 692 F.3d 42, 49 (2d Cir. 2012).  Specifically, "where on one side [of a litigation] there are citizens and aliens and on the opposite side there are only aliens" a federal court lacks jurisdiction.  *Id.* (internal quotation marks omitted).  This is the exact circumstance presented here.  Plaintiff is a citizen of Brazil, and Defendants are citizens of North Carolina, California, and Brazil.  Therefore, on Defendants' side there are both citizens and aliens, and on Plaintiff's side there is only an alien.  Accordingly, this court lacks subject matter jurisdiction under diversity of citizenship to decide the state court claims alleged.

### B. *Fraudulent Joinder*

Defendants further argue that I have subject matter jurisdiction under diversity of citizenship because the alien Defendants destroying diversity jurisdiction (Siega and Colombo) were fraudulently joined and should be dismissed.  Specifically, Defendants argue that Plaintiff's only claim against Defendants Siega and Colombo, for unjust enrichment, is (1) barred by the statute of limitations, (2) barred by the statute of frauds, and (3) not adequately plead under Rule 12(b)(6).  These arguments are without merit.[5]

In conducting my analysis of the sufficiency of Plaintiff's unjust enrichment claim, I note that Plaintiff's state court complaint was filed pro se, and must be "liberally construed" and "held

---

[5] Although the claim for unjust enrichment is made against both Seiga and Colombo, the following analysis is conducted only with regard to Defendant Siega.  Because I find that Defendant Siega was not fraudulently joined to the action, and Siega's presence in the case is sufficient to warrant remand, I need not opine on the sufficiency of the allegations against Defendant Colombo.

to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (internal quotation marks omitted). Although Plaintiff retained counsel to brief Plaintiff's motion to remand, the pro se complaint is still given liberal construction. *Nicholas v. Bratton*, No. 15-CV-9592 (JPO), 2019 WL 2223407, at *3 (S.D.N.Y. May 23, 2019) ("the majority of courts have continued to afford liberal construction to *pro se* pleadings even where counsel takes over the case at a later stage."). I choose to apply this standard specifically at this stage of litigation because on a motion to remand to state court I must make my determination based upon the allegations and sufficiency of the pleading in the state court complaint. The fact that Plaintiff was able to retain representation to file this motion does not change the fact that Plaintiff's state court complaint was filed pro se. Because I must determine whether Plaintiff has sufficiently alleged a claim for unjust enrichment in considering the instant motion, I must read the pleadings with the proper liberal construction.

"[A] plaintiff may not defeat a federal court's diversity jurisdiction . . . by merely joining as defendants parties with no real connection with the controversy . . . In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court. The defendant seeking removal bears a heavy burden of proving fraudulent joiner, and all factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia v. RJR Nabisco,*

*Inc.*, 138 F3d 459, 460–61 (2d Cir. 1998).  Resolving all factual and legal issues in favor of

Plaintiff, and construing Plaintiff's pro se complaint liberally, I find that Defendants have failed

to show by clear and convincing evidence that there is no possibility that Plaintiff can state a

cause of action against the non-diverse Defendants in state court.

First, Defendants' argument that Plaintiff's unjust enrichment claim is barred by the

statute of limitations is without merit.  Under New York Law, a claim for unjust enrichment

carries a six-year statute of limitations.  *Haining Zhang v. Schlatter*, 557 Fed. App'x 9, 12 (2d

Cir. 2014) (summary order); *see Mitchell v. Faulkner*, 531 Fed. App'x 136, 137 (2d Cir. 2013).

Plaintiff alleges that his claims accrued on December 27, 2012, and he filed this suit on

December 26, 2018, the last day of the statutory period.  Defendants cite to cases which state that

the statute of limitations for an unjust enrichment claim is three years, not six, if a plaintiff seeks

monetary damages.  However, Plaintiff seeks "restitution/compensation" as a result of the

transactions that adopted his transaction structure.  (Compl. ¶ 92.)  Restitution is an "equitable

remedy . . . appropriate only where there has been a showing of unjust enrichment." *Brown v.

Sandimo Materials*, 250 F.3d 120, 126-27 (2d Cir. 2001) (considering whether a claim lies in law

or in equity to determine whether Plaintiff has relief under the Labor Management Relations

Act).  Construing Plaintiff's pro se complaint liberally, and considering the standard for

fraudulent joinder as merely requiring I find that Plaintiff has a possibility of stating a claim of

equitable relief for unjust enrichment against Defendants in state court, Plaintiff has sufficiently

alleged for the purpose of fraudulent joinder, a claim of equitable relief for unjust enrichment.

Therefore, the statute of limitations is six years, and Plaintiff's action would be timely.  In

addition, the cases cited by Defendants are inapplicable, as they relate to claims for replevin or

conversion of chattels under CPLR § 214(3), not for claims that lie in contract or quasi-contract

under CPLR § 213(2).  *See Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 263 (S.D.N.Y. 2008); *Ingrami v. Rover*, 45 A.D.3d 806, 808 (2d Dep't 2007).  As such, Defendants' argument that Plaintiff's claim for unjust enrichment must be dismissed because the statute of limitations bars recovery is incorrect.

Second, Defendants' statute of frauds argument fails as the statute of frauds is inapplicable to Plaintiff's claim.  New York General Obligations Law § 5-701(a)(10) says, in relevant part:  "Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking . . . Is a contract to pay compensation for services rendered in negotiating a loan. . . or of a business opportunity, business, its good will, inventory, fixtures or an interest therein . . .  'Negotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction.  This provision shall apply to a contract implied in fact or in law to pay reasonable compensation . . . ."

 Plaintiff claims Siega and Colombo were unjustly enriched by two of Moskovits's contributions to the deals:  first, that Moskovits provided an "unprecedented financing structure" to enable sub-sovereign states (including state-owned entities) or municipalities to obtain low-interest loans, and second, that Moskovits provided services to Defendants by creating "business opportunities in the States of Santa Catarina, Mato Grosso, and Maranhao," through introductions and meetings with the representatives of these entities.  (Compl. ¶¶ 57–58.)  Although a claim for unjust enrichment based solely on the latter contribution is possibly barred by the statute of frauds, the claim based on the former contribution is not.  Plaintiff seeks "compensation/restitution" for providing Defendants with a novel deal structure for the loans,

without which the loans could never have been provided.  (Compl. ¶¶ 8–9, 12–16, 37.)  The Defendants allegedly used this deal structure in creating these loans, and Plaintiff seeks "compensation/restitution" for the benefits Siega allegedly gained from his contribution of the deal structure.  (Compl. ¶¶ 46, 61).  Plaintiff's contribution to the deals was not merely "negotiation" as defined by New York General Obligations Law § 5-701(a)(10).  As such, Defendants' claim that the statute of frauds bars recovery is incorrect.

Third, Defendants' claim that Plaintiff has not properly alleged the requisite elements for a claim of unjust enrichment is also incorrect.  "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Grynberg v. ENI S.P.A.*, 503 Fed. App'x 42, 43 (2d Cir. 2012) (summary order) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)).  Siega attended multiple meetings with Grigsby and the sovereign states and utility companies, and was copied on many of the emails between Grigsby and Moskovits surrounding the potential deals.  (Compl. ¶¶ 23, 25.)  Siega allegedly received compensation for his role in closing the deals between BoA and the Brazilian entities.  (Compl. ¶ 60.)  Plaintiff and Siega even met in Santa Catarina, where Moskovits complained to Siega that his work product and services had been "misappropriated" to close the deals between BoA and the States of Santa Catarina and Mato Grosso.  (Compl. ¶ 56.)  Plaintiff alleges that Siega and Grigsby reached their own deals without him, while utilizing his loan structure.  (Compl. ¶ 33.)  If the allegations are true, and Siega was enriched using Moskovits's deal structure, it would be inequitable to allow Siega to retain the compensation to which Moskovits is entitled.  These allegations are, therefore,

sufficient to establish that there is a possibility that based on the pleadings Plaintiff can state a cause of action for unjust enrichment against Siega in State Court.[6]

Accordingly, I find that Defendant Siega was not fraudulently joined to the action, as Defendants have not shown by clear and convincing evidence that there is no possibility that Plaintiff can state a cause of action against Siega.  As such, Defendants have failed to establish that this court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

IV.   **Conclusion**

For the foregoing reasons, Plaintiff's motion to remand is GRANTED.  The case is hereby REMANDED to the Supreme Court of the State of New York, New York County. Defendant's motion to dismiss and Plaintiff's motion to amend the complaint are DENIED as moot.  The Clerk of the Court is directed to close the motions 27, 32, and 39 and terminate this case.

In accordance with 28 U.S.C. § 1147(c), the Clerk of Court is further directed to mail a certified copy of this order of remand to the clerk of the Supreme Court of the State of New York, New York County—the court from which this action was removed.

---

[6] I note that no party or subsequent court should read this decision as ruling that Plaintiff has properly pleaded a cause of action under Rule 12(b)(6).  Rather, I make my ruling solely on the question of whether Defendants were fraudulently joined to the action, a much lower legal standard than on a motion to dismiss.  "Courts applying the *Pampillonia* standard scrutinize the plaintiff's claims with greater leniency than when ruling on a motion to dismiss," and, if there is doubt as to whether the complaint would survive a motion to dismiss in state court any, "doubt must be resolved in favor of plaintiff and the case must be remanded."  *Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 471 (S.D.N.Y. 2006) (if there is no "reasonable possibility that the plaintiff would be permitted to litigate the claim, then remand must be denied.  If the answer is doubtful, that doubt must be resolved in favor of the plaintiff and the case must be remanded.").

SO ORDERED.

Dated: June 9, 2020
         New York, New York

Vernon S. Broderick
United States District Judge